In the Matter of the Application of CHARLES B. HANEY
for a Writ of *Certiorari*.

The proceedings of a circuit court of this state, in chancery, under the Revised Statutes of 1849, upon the application of the guardian of an infant for leave to sell the real estate of such infant, cannot be reviewed in this court by a common law *certiorari*.

Whether an appeal lay in behalf of the infant from the orders of the circuit court in such a case, *quære*.

Whether the common law writ of *certiorari* can ever properly be issued to the circuit courts of this state, is not decided in this case.

. APPLICATION for a *Certiorari*.

*Charles B. Haney* sued out of this court a writ of *certiorari* to bring up for review certain proceedings which were had in the circuit court for Dane county in 1853, '54 and '55, "in the matter of the petition of Berry Haney, guardian of *Charles B. Haney*, an infant under the age of fourteen years," by virtue of which certain lands, of which he was then the owner, were sold. Upon the filing of the return made to the writ, the question of the regularity and validity of the proceedings in the circuit court, and also the question whether they could properly be reviewed by *certiorari*, were argued; but as the decision of this court relates only to the latter question, the argument of counsel upon the former is omitted.

*E. A. Spencer*, for petitioner, discussed the validity of the proceedings in the circuit court.

*Julius T. Clark*, for respondent, cited Fitzherbert's N. B., 245–7, and said he found no instance in the common law decisions where the writ of *certiorari* was used like a writ of error or appeal for the correction of errors either of substance or form in the proceedings of an inferior court, where such court had jurisdiction of the subject matter of the suit. See *Johnson vs. Moss*, 20 Wend., 145; *Frederick vs. Clark*, 5 Wis., 191; *Roberts vs. Warren*, 3 id., 736. 2. The circuit court had jurisdiction of the subject matter in regard to which its decision is sought to be reached by this writ. (1) Courts of chancery are the guardians and have the ultimate control of both the persons and the property of all the infants of the state. Fonb. Eq., B. 2, chap. 1, § 1, notes; Willard's Eq., 617; 1 Blacks. Comm., 462, note; 2 Kent's Comm., 228; 3 Kinnie's Law Comp., 391, and cases there cited; 25 Wend., 104. (2) Our circuit court, at least before the adoption of the Code, had all the powers of the English or New York court of chancery. R. S., 1849, chap. 84. It had therefore complete jurisdiction over the matter in question even with-

out the aid of the statute.  (3) Under the statute, the court acquired jurisdiction upon the presentation of the petition of the infant *Charles B. Haney*, by his natural guardian. The father was the proper person, both at common law and under the statute, to make and present the petition to the court.  2 Kent's Comm., 231 ; Reeves' Dom. Rel., 320, 321 ; *Cleveland vs. Hopkins*, 2 Aik., 394.  A father needs no authority from his minor children to bring suit in their behalf. 2 Har. Dig., 3289 ; 7 Mees. & Wel., 400.

*H. E. Frink*, for petitioner :

A writ of *certiorari* runs from a superior to an inferior tribunal to correct errors in the proceedings of the latter which are not according to the course of the common law.  5 Dane's Abr., 57, 85, 87, 95 ; 4 Mass., 671 ; 4 Pick., 126 ; 8 id., 218 ; 15 id., 237 ; 2 N. H., 210 ; 1 Salk., 144, 146.  It lies where error does not, unless expressly taken away by statute. 2 N. H., 210 ; 6 Ala., 717 ; 2 Yerg., 176 ; 5 Dane's Abr., 93 ; 2 Burr., 1040 ; 8 T. R., 542 ; 2 Harr. (N. J.), 25. Where an error occurs in the proceedings of the court below, not according to the course of the common law, in any stage of a cause (whether civil or criminal), this writ is the only remedy unless some other is given by statute.  5 Binney, 27 ; 1 Gill & Johns., 196 ; 11 Mass., 466 ; 3 Halsted, 123 ; 3 Pick., 194 ; 4 Hayward, 100 ; 2 Greenl. R., 165 ; 8 id., 293 ; 8 Cush., 538.  Even where an appeal might be prosecuted (which it could not in this case because the statute did not provide for it,) this would not destroy the petitioner's right to this writ.  5 Dane's Abr., 93 ; *The King vs. Standard Hill*, 4 M. & S., 378 ; 1 Salk., 147 ; 2 Burr., 1040 ; 2 Strange, 991 ; 2 Harr. (N. J.), 25 ; 10 Met., 220.  2. Proceedings to sell the real estate of infants are not according to the course of the common law ; nor have courts of chancery, as such, any jurisdiction to sell such real estate.  6 Hill, 416 ; 4 Coms., 257 ; 10 Barb. (S. C.), 555 ; 1 Am. Lead. C., 122 ; 6 Dana, 466 ; 10 Leigh, 408, 421 ; 11 Ill., 636 ; Crary's Pr., 419, 421 ; 4 Johns. Ch. R., 378.  3. This court has power to issue the writ of *certiorari* for the purpose of reviewing the action of inferior courts, and it has been its practice heretofore to do so.  Constitution of Wis., Art. VII,

sec. 3; R. S. 1858, chap. 115, secs. 5 and 6; 1 Chand., 285; 3 Wis., 736; 5 id., 195. 4. There is no other direct way to review these proceedings. They are special, and no appeal could be had in the absence of any statutory provision to that effect. They were *ex parte*, and hence a writ of error would not lie. See the Fisher Will Case, 4 Wis., 254, and the old rules of this court, 26–29, made to regulate the practice in such cases. 5. As to the objection that the general control given to this court by the constitution over all inferior courts, has reference to courts of limited jurisdiction, and does not extend to those exercising a general common law jurisdiction, counsel cited the language of Fitzherbert, referred to by the opposite counsel, as showing that under this writ, records "in the common pleas or in any other court of record" were required to be certified. Counsel also cited rules 26–29 old rules of this court; and the following cases; *The Palmer Co. vs. Ferrill,* 17 Pick., 58; *Barnard vs. Fitch,* 7 Met., 605; *Commonwealth vs. Hall,* 8 Pick., 440; 4 id., 125; 11 Mass., 417, 462; 5 id., 420; 8 id., 457; *Gile vs. Moore,* 2 Pick., 386. 6. Upon the return to the writ, this court is not confined to the question whether the court had jurisdiction of the cause. The writ brings up the *whole record*; and it would seem to follow that the whole record may and ought to be examined, and every substantial error rectified. Counsel further argued that the circuit court did not obtain jurisdiction of the cause; and that if it did, the proceedings were irregular, and the sale under them void.

December 11. *By the Court,* PAINE, J. This was an application for a common law writ of *certiorari,* to review the proceedings of the circuit court of Dane county, in chancery, upon an application by the guardian of the petitioner for leave to sell his real estate while he was a minor. When the application was made, it certainly appeared to the court that such a use of a common law *certiorari* would be novel in its character, but the writ was issued without argument, subject to the opinion of the court upon the question whether it would lie in such a case. We are now all of the opinion that it will not.

June Term, 1861.

In re HANEY.

No case was cited where a proceeding in chancery was ever reviewed by this writ. But counsel relied upon the general language found in many authorities treating of this writ, that it lies to review the proceedings of inferior tribunals not proceeding according to the common law. He then showed that the power to authorize the sale of the real estate of infants was not a part of the inherent jurisdiction of a court of chancery, but could only be conferred by statute. And he then inferred that because the court of chancery was inferior to the supreme court, and in selling the real estate of infants was not proceeding according to the course of the common law, therefore the case came exactly within the authorities allowing this writ. The same argument was made in *Peters vs. Peters*, 8 Cush., 529, where it was sought to review the proceedings of a probate court by a *certiorari*. And it was answered very elaborately, and to our minds very satisfactorily, by Chief Justice SHAW, and it is only necessary to refer to his reasoning, and to say that we think it more clearly applicable to an attempt to review a proceeding in chancery, than it was to an attempt to review a proceeding in probate.

The following are also direct authorities against such a use of the writ: *Galloway vs. Stophlet*, 1 Ohio St., 434; *Gilliland vs. Adm'rs of Sellers*, 2 id., 226.

There is also much room for doubt whether the circuit courts of this state are courts of inferior, limited jurisdiction, within the meaning of the rule concerning the common law *certiorari*. It is true they are inferior in the sense of not being the supreme tribunal, but they are still superior courts of general jurisdiction, to review whose proceedings, wherever they are capable of being reviewed at all, either an appeal or writ of error lies. The *certiorari* has, however, usually been held applicable to the really inferior tribunals of limited and special jurisdiction. See *Morewood vs. Hollister*, 2 Seld., 312, and cases cited. Nor do we think the old rule adopted by this court, in respect to the removal of cases from the circuit which had been brought by appeal from the probate courts, can be held to impair this view, or to show that a common law *certiorari* is in general a proper mode of re-

viewing the action of the circuit courts. The practice previously had been to bring such cases here by writ of error. *Bronson vs. Burnett,* 1 Chand., 9. And it is obvious that the *certiorari* spoken of in the rule referred to, adopted in December, 1853, was really not in the nature of a common law *certiorari,* but was more in the nature of an appeal, and that the design of it was to bring up the case for a retrial on the evidence and merits of the case. Indeed the rule itself, in the last part of it, spoke of it as an appeal. It was adopted merely to prescribe a method of bringing the case to this court for the exercise of its acknowledged appellate jurisdiction. We do not say there are no instances in which the common law *certiorari* will run to the circuit courts, but if there are, we are clearly of the opinion that it is not the remedy to review proceedings in chancery. Nor do we think it makes any difference whether the act sought to be reviewed, was done in the exercise of its original, inherent jurisdiction, or of new powers conferred on it by statute. It was at first held that none but the chancellor could issue this writ, but the power was afterward extended to the common law courts. 1 Tidd's Pr., 397. But we have found no instance where those courts ever attempted to review the action of the chancellor by means of it.

The counsel contended that this writ would lie in all cases where a writ of error or appeal would not; which he said was true here, and that if this writ is denied it presents a case where the infant's rights are prejudiced without any remedy for the wrong. We are not prepared to say whether an appeal could have been taken from the action of the circuit court or not. The proceedings were had under sec. 51 and the subsequent sections of chap. 84, R. S. 1849. The right of appeal is given by sec. 110, which confines it to "any person, being either complainant or defendant." But if there could be no appeal in an application to sell the lands of an infant, it must be because there were no antagonistic parties, because the proceeding was *ex parte,* considered as made in behalf of the infant by his guardian, authorized in law to represent him and bind him by his acts. If such is the true nature of the proceeding, there would seem to be

an incongruity in allowing an infant to come into court by his guardian and ask to have certain proceedings taken in his behalf, and then come into an appellate court, either by himself after he came of age, or by some other guardian or next friend before he came of age, and ask to have those proceedings reversed for error. And if these considerations furnished a good ground why no appeal should be allowed in such a case, the same reasons would be good against allowing the infant any other mode of review. If he was prejudiced by the proceedings being injudiciously taken, it would have to be considered as one of the many instances where injury may arise from the indiscreet action of those who are authorized to represent others, but by whose acts the persons represented are bound. The case of *Peters vs. Peters*, before referred to, would also sustain this conclusion. It held that where a guardian *ad litem* was appointed for an infant, and assented to certain proceedings, the infant would be bound by such assent. And the guardian who was required to be appointed by sec. 51 of our statute, as well as the general guardian, certainly acted for the infant in this matter, as fully as the guardian *ad litem* in that case. In addition to this, by sec. 59 the infant was considered as the ward of the court from the time of the application. And if both guardians, and the court itself, could not so represent the infant in proceedings taken entirely in his own behalf, as to bind him, it is difficult to see how an infant can ever be so represented as to be bound.

The writ is dismissed, with costs.