WILLIAM HYDE *et al. vs.* THE SUPERIOR COURT.

JANUARY 4, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Certiorari. Jurisdiction of Supreme Court to Issue Writ.*

Cons. R. I., art. XII, § 1, provides that "The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity."

It shall have power to issue prerogative writs . . .

Court & Practice Act, cap. 1, § 2, provides, "The supreme court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided; it may issue writs . . . of *certiorari* . . . and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law" etc.

Court & Practice Act, cap. 3, § 33, provides "The supreme (court) shall have power . . . to frame and issue such citations, executions, and other writs and processes as may be necessary or proper to carry into full effect all the powers and jurisdiction which are or shall be conferred upon (it) by the constitution or by law":—

*Held*, that, in the exercise of its jurisdiction, the Supreme Court was not confined to any narrow technical definition of the office of the extraordinary writs, but might use such writs in their accepted forms when adapted to the purpose sought, or might adapt or modify them or frame new writs and processes; so that if the court found that the *form* of the writ of *certiorari* as commonly used was adapted to the purpose, in a proper case, it was not concerned as to whether the *common-law* writ of *certiorari* could have been used in such a case.

When the Supreme Court issues a writ of *certiorari* to the Superior Court sitting in equity it does not issue a *common-law* writ of *certiorari*, but an extraordinary process appropriate to its revisory and supervisory powers and the only question to be determined preliminary to the exercise of its extraordinary powers under such writ is whether there exists any error or abuse in the court of inferior jurisdiction without other remedy expressly provided, and whether the exercise of the power is "necessary for the furtherance of justice and the due administration of the law."

(2)   *Certiorari.   From Supreme to Superior Courts.*

Under the provisions of the court and practice act, chapter 1, section 2, *certiorari* will lie from an interlocutory decree of the Superior Court in equity, to correct "errors and abuses" therein.

(3)   *Equity.   Consent Decrees.*

It is the well-settled law of this State that a decree entered by consent in an equity cause can not be set aside or revoked except by consent.

PETITION praying that *certiorari* issue to the Superior Court. The facts are fully stated in the opinion.   Petition granted.

PARKHURST, J.   This is a petition, addressed to this court, asking that it issue a writ of *certiorari* to the Superior Court, sitting in equity.   The petition is as follows:

"*To the Hon. Supreme Court:*

"I.   William Hyde, Anne Anderton and Mary Anderton, of Pawtucket in said county, respectfully represent that they,

together with John Hyde, Oswald Hyde, Alice Pearson and Elizabeth Elliott, also all of said Pawtucket, are the children and sole heirs at law of John Hyde, deceased, late of said Pawtucket, intestate, and that Lucy A. Hyde, of said Pawtucket, is the widow of said John Hyde.

"II. . Your petitioners further represent that said John Hyde, the father of the parties hereto and husband of said widow, deceased at said Pawtucket, intestate, on the    day of        , A. D. 1903, leaving a large amount of real estate in said Pawtucket, to which the petitioners and the other children herein named are the sole heirs, and in which said Lucy A. Hyde, widow, was entitled to dower.

"III.   Your petitioners not being able to have the said other children of said John Hyde to agree upon a partition of said real estate, filed their Bill for Partition in our Superior Court on the 28th day of March, A. D. 1906, entitled *William Hyde* vs. *John Hyde et als.* No. 944, in due form, and a Subpoena was duly issued to said John Hyde, Oswald Hyde, Alice' Pearson and Elizabeth Elliott and to said Lucy Hyde, widow, as respondents.   And Louis Lescault, mortgagee of the undivided interest of said Oswald Hyde, was afterwards duly made a party respondent to said bill for partition.

"IV.   And your petitioners further show that on the ninth day of June A. D. 1906, by written consent of all the parties plaintiff and defendant to said bill for partition, a decree was entered in said Superior Court by which it was decreed that the widow's dower in said land was reduced to an annuity in cash, payable quarterly, which said decree was consented to by said widow's solicitor.   Said decree assigning dower contained a further provision that the said heirs should give a bond to secure said annuity and that said bond should be given before partition should be made of said real estate.   But no time was fixed within which said bond should be given.

"V.   After the entry of said decree, said John Hyde, Alice Pearson, Oswald Hyde and Elizabeth Elliott, refused to give said Bond and it being agreed that the deposit of money to create and maintain a fund out of which said widow's annuity should be paid, was a more acceptable and beneficial method

of fixing said annuity, all of the parties to said bill, including said widow, appeared personally or by counsel before said Superior Court, Mr. Justice Stearns presiding, on the 30th day of June A. D. 1906, and a further decree was entered in said cause by agreement in open court, fixing the time in which said bond should be filed or in the alternative permitting said heirs to deposit a certain sum towards and constituting a fund out of which said annuity should be paid.

" VI.  ·On the same day, to wit: June 30th A. D. 1906, after said decree fixing said time had been entered, said heirs by their counsel consented to the entry of a decree for partition, in which said decree the former decree fixing said annuity fund was confirmed and in which the title of said heirs was declared to said real estate and each of said heirs selected a commissioner to partition  said real estate, which said commissioners were . named in said decree.   Said decree after directing said commission to act, further ordered said commission to make report of its doings to said Superior Court there to await further proceedings.

"VII.   Said commission duly organized and notified all parties interested, held many hearings and prepared plats of said real estate, which real estate consists of over one hundred acres, and a great amount of costs and expense have accrued.

"VIII.   Said John Hyde, Alice Pearson, Oswald Hyde and Elizabeth Elliott still refused to give said bond or to deposit money to constitute said fund for said annuity, and, July 10th, A. D. 1906, these petitioners, who have always been ready either to give said bond or to deposit cash for said fund, prayed said Superior Court to declare said John Hyde, Alice Pearson, Oswald Hyde and Elizabeth Elliott to be in contempt for refusing to comply with said decree: said motion was heard before Mr. Justice Baker of said Superior Court, in Chambers, on the    day of August A. D. 1906, and was denied on the ground that the petitioners had no right to ask for said finding, as the widow was the party alone interested.   On the    day of September A. D. 1906, said John Hyde, Alice Pearson, Oswald Hyde, and Elizabeth Elliott petitioned said court to have said decree fixing dower amended, but said petition was dismissed, and on the

day of October, A. D. 1906, said Lucy A. Hyde, widow, petitioned said court for a writ of sequestration because said John Hyde, Alice Pearson, Oswald Hyde and Elizabeth Elliott had not complied with said decree fixing the dower, but said petition was denied before Mr. Justice Brown on the ground that said parties had not yet been adjudged to be in contempt.

"IX.   And now your petitioners show that, on the 10th day of November A. D. 1906, said Lucy A. Hyde, widow, presented her petition to said Superior Court asking to have set aside the two decrees entered by consent on the said 30th day of June A. D. 1906, to wit: the decree fixing the said annuity and the time in which the fund was to be contributed, and also the decree appointing commissioners of partition and declaring the interests of the parties in said real estate.   Said petition of said widow was heard on said day before Mr. Justice Brown in Chambers and was granted, and a decree setting aside both of said decrees of June 30th, A. D. 1906, was ordered to be entered · against the protests of your petitioners, William Hyde, Anne Anderton and Mary Anderton, who then and there protested that said decrees were consent decrees and that said court did not have power to set aside the same.

"Wherefore your petitioners represent and show that said Superior Court had no jurisdiction to set aside said decrees or of the petition to set aside the same, and its acts in setting aside said decrees, and the records thereof, are erroneous and illegal in the several particulars and for the several reasons which are recited and annexed to this petition, and made a part hereof, upon which your petitioners will rely for its support.

"Your petitioners therefore pray that this court will issue its writ of *certiorari* ordering the said Superior Court to certify its records relating to said decrees setting aside said decrees of June 30th, A. D. 1906, that they may be presented to this court; to the end that the same, or so much thereof as may be illegal may be quashed."

CAUSES OF ERROR.

"I.   It appears of record that the decree entered June 9th A. D. 1906, by which the widow's dower was reduced to an

annuity, was a decree entered by the consent of all the parties, and such a decree can not be set aside without consent of all the parties.  The provision in said decree that the parties, heirs, should give bond before partition is made is simply a method by which the annuity is to be secured, and, as it is mandatory, it can be enforced by proceedings in contempt.

"II.  The decree called "Decree Fixing Time" for giving bond does not on its face show that it was entered by consent, although all of the parties in open court agreed to it, because it substituted the raising of a fund as an alternative to giving the bond mentioned in the decree of June 9th, aforesaid.  If the court had jurisdiction to set aside said decree fixing time, the decree of June 9th still remained in force as a consent decree.

"III.  The second decree entered June 30th, A. D. 1906, after the decree fixing time for giving bond, was signed by counsel for all of the heirs, and was a consent decree, although it was not signed by counsel for the widow.  The dower rights of the widow had already been provided for in the decree of June 9th.  This was a consent decree by which the rights of the heirs were determined, and commissioners were appointed. These commissioners were selected by the parties and have completed their work at great expense, and are now preparing their report as required by the decree appointing them, to await the further action of the court.

"The Superior Court had no jurisdiction to alter or set aside this decree without the consent of the parties."

Upon this petition citation was ordered, issued, and served upon the solicitors of record for parties named in the citation (being the respondents in the original cause), requiring them to show cause why the prayer of the petition should not be granted.

Upon hearing, after return of this citation, the several parties appeared by their solicitors; and upon the argument the allegations of the petition were not denied; but the respondents raise the following questions, viz.:

"I.  Will the common-law *certiorari* lie to review proceedings in a court of equity?

"2. Will any kind of *certiorari* lie from an interlocutory decree?

"3. Is not the act complained of in the petition one of judicial discretion, within the provisions of chapter 23, section 428, of the court and practice act?"

In order to answer these questions we must look to the jurisdiction conferred upon this court by the constitution and the statutes.

Article XII, section 1, of the amendments to the constitution reads as follows:

## "ARTICLE XII.

"SECTION 1. The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law. A majority of its judges shall always be necessary to constitute a quorum. The inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law."

The court and practice act, chapter 1, sections 1 and 2, reads as follows:

"SECTION 1. The supreme court shall consist of a chief justice and four associate justices.

"SEC. 2. The supreme court shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided; it may issue writs of *habeas corpus*, of error, *certiorari*, *mandamus*, prohibition, *quo warranto*, and all other extraordinary and prerogative writs and processes necessary for the furtherance of justice and the due administration of the law," &c.

It is plain that the "final revisory and appellate jurisdiction" of this court applies equally to "all questions of law and equity," and no form of words could confer broader and more complete powers of "supervision of *all* courts of inferior juris-

diction to correct and prevent errors and abuses therein *where no other remedy is expressly provided.*"

The court and practice act, chapter 3, section 33, reads as follows:

"Sec. 33. The supreme and superior courts shall have power to enter such judgments, decrees, and orders, and to frame and issue such citations, executions, and other writs and processes, as may be necessary or proper to carry into full effect all the powers and jurisdiction which are or shall be conferred upon them respectively by the constitution or by law. They shall have power to punish, by fine or imprisonment, or both, all contempts of their authority."

In the exercise of the jurisdiction thus conferred this court is not confined to any narrow technical definition of the office of the extraordinary writs named in section 2; but it may use those writs in their accepted forms when adapted to the purpose sought; or it may adapt them, or modify them; or it may frame new writs and processes, as above expressly provided.

So that if this court finds that the *form* of the writ of *certiorari* as commonly used is adapted to the purpose of the court in a proper case, it is not concerned to inquire or decide whether the *common-law* writ of *certiorari* was ever used or could have been used in such a case. An extended examination of cases in the various State courts, wherein the writ of *certiorari* has been granted or refused at law, furnishes no instructive rule in a case of this kind, but simply shows that the courts of any particular State are governed by the provisions of their own constitutions and statutes and rules of practice as to the granting or refusal of the writ, subject to the general rule as to all extraordinary process, that it is to be used only where no other remedy is expressly provided by law, or where the remedy by *certiorari* is itself an express remedy.

As to the first question raised by the respondents—"Will the *common-law certiorari* lie to review proceedings in a court of equity;" such a question must, in strictness, be answered in the negative, for the reason that courts of *common law, as such,* never had at any time, so far as we are advised, any such power;

and it is inconceivable that such power should ever have been granted. But a glance at the provisions of our constitution and statute above quoted will show that this court is not simply a court of common law, but has "final revisory and appellate jurisdiction upon all questions of law and *equity;*" and "general supervision of *all courts of inferior jurisdiction* to correct and prevent errors and abuses therein when no other remedy is expressly provided;" so that if this court issues a writ of *certiorari* to the Superior Court sitting in equity, it does not issue a *common-law* writ of *certiorari*, but an extraordinary process appropriate to its revisory and supervisory powers; and the only questions, which this court must determine as preliminary to the exercise of its extraordinary powers under this writ, are whether there exists any error or abuse in the court of inferior jurisdiction, without other remedy expressly provided, and whether the exercise of the power is "necessary for the furtherance of justice and the due administration of the law."

(2)    The second question raised is, "Will any kind of *certiorari* lie from an interlocutory decree?" Ordinarily this question would be answered in the negative; because in most cases in equity, where an appeal lies from final decree only, as in this State (C. P. A. p. 95, § 328) (excepting interlocutory appeals in matters of injunction and receivers, § 337), such appeal carries the full record to the final court of appeal, and any injury done by interlocutory decree can generally be fully dealt with by that court, whose final decree or order will correct all errors of the court below.

In this case, however, we have this peculiar situation: the parties to the bill, by decrees entered June 9 and June 30, 1906, with full consent of all parties interested, first ascertained and commuted the widow's dower interest in the land to a specific annual income to be secured by the other parties by bond or deposit of money; then by further decree of June 30th, 1906, by consent of all parties interested (other than the widow, whose dower rights had been so ascertained and commuted), proceeded to the appointment of commissioners to partition the real estate; and these commissioners have proceeded under the said decree with their duties, spending much time and in-

curring such expense, in hearings, in making plats and other- wise preparing to make their report under the said decree; and in the meantime the Superior Court, having refused to enforce the decree relating to securing the widow's dower by compelling the parties to the said latter decree to either give bond or de- posit money according to their obligations, finally, upon appli- cation of the widow, and against the protests of these petition- ers, on November 10, 1906, set aside its decree of partition, entered June 30th, 1906, and also its decree entered June 30th, 1906, fixing the time for carrying out the provisions for the security of the widow's annuity in lieu of dower. The parties to the bill, by reason of this action on the part of the court, after having spent all the time necessary to arrive at a partition of the estate and having incurred practically all the expenses incident thereto, are thus, if this action of the court is to be deemed proper and lawful, thrown back into a situation where all this work is to be done over again, unless they shall dismiss their bill and make a compromise; and this not through any fault of the petitioners, who have always been ready to carry out the terms of all the decrees, but solely because some of the respondents have refused to abide by the same and the court has not seen fit to enforce them.

Is this action of the Superior Court such an error or abuse, where "no other remedy is expressly provided," as comes within the purview of chapter 1, section 2, of the court and practice act? We think it is plainly so, from the very fact that such action was interlocutory, and hence there was no appeal therefrom. (C. P. A. p. 95, § 328 *et seq.*) In fact, such action tends to postpone an appeal indefinitely; and if such action can be deemed lawful and proper, it may be repeated from time to time, so that the cause will never be ripe for ap- peal, while the entire value of the estate may be dissipated in costs and expenses.

(3)     The third question raised is, "Is not the act complained of in the petition one of judicial discretion within the provisions of chapter 23, section 428, of the court and practice act?"

The section referred to read as follows:

"SEC. 428. In case of judgment by default, or in case of judgment entered by mistake, or in case of decrees in all equity causes and causes following the course of equity, the court entering the same shall have control over the same for the period of six months after the entry thereof, and may, for cause shown, set aside the same and reinstate the cause, or make new entry and take other proceedings, with proper notice to parties, with or without terms, as it may direct by general rule or special order."

We do not find in the petition or statements of counsel in argument any such "cause shown" as should have warranted the Superior Court in setting aside the decrees, even if they were decrees entered by the court after the contest between the parties in litigating disputed rights. But in this case the decrees were entered by consent, and it is well settled in this State, as in other jurisdictions, that a decree entered by consent in an equity cause can not be set aside or revoked except by consent. *Bristol* v. *Bristol & Warren Water Works et al.*, 19 R. I. 631; *Hazard* v. *Hidden*, 14 R. I. 356.

The third question must therefore be answered in the negative.

Jurisdiction to review by writ of *certiorari* any case "made final in the Circuit Court of Appeals" was conferred upon the United States Supreme Court, under the act of March 3, 1891, c. 517, entitled, "An Act to establish Circuit Courts of Appeals," &c. That act does not contain any express provision relating to the use of the writ of *certiorari* to review interlocutory proceedings in equity; but the United States Supreme Court in construing the act, in the equity case of *American Construction Co.* v. *Jacksonville &c. Railway Co.*, 148 U. S. 372, where the matters in question related to certain interlocutory decrees, says at p. 384 (through Mr. Justice Gray):

"Whether an interlocutory order may be separately reviewed by the appellate court in the progress of the suit, or only after and together with the final decree, is matter of procedure rather than of substantial right; and many orders made in the progress of a suit become quite unimportant by reason of the

final result, or of intervening matters. Clearly, therefore, this court should not issue a writ of *certiorari* to review a decree of the Circuit Court of Appeals on appeal from an interlocutory order, unless it is necessary to prevent extraordinary inconvenience and embarrassment in the conduct of the cause.

"In such an exceptional case, the power and the duty of this court to require, by *certiorari* or otherwise, the case to be sent up for review and determination, cannot well be denied, as will appear if the provision now in question is considered in connection with the preceding provisions for the interposition of this court in cases brought before the Circuit Court of Appeals. In the first place, the Circuit Court of Appeals is authorized, ' in every such subject within its appellate jurisdiction,' and ' at any time,' to certify to this court ' any questions or propositions of law,' concerning which it desires the instruction of this court for its proper decision. In the next place, this court, at whatever stage of the case such questions or propositions are certified to it, may either give its instruction thereon or may require the whole record and cause to be sent up for its consideration and decision. Then follows the provision in question, conferring upon this court authority ' in any such case as is hereinbefore made final in the Circuit Court of Appeals,' to require, by *certiorari* or otherwise, the case to be certified to this court for its review and determination. There is nothing in the act to preclude this court from ordering the whole case to be sent up, when no distinct questions of law have been certified to it by the Circuit Court of Appeals, at as early a stage as when such questions have been so certified. The only restriction upon the exercise of the power of this court, independently of any action of the Circuit Court of Appeals, in this regard, is to cases ' made final in the Circuit Court of Appeals,' that is to say, to cases in which the statute makes the judgment of that court final, not to cases in which that court has rendered a final judgment. Doubtless, this power would seldom be exercised before final judgment in the Circuit Court of Appeals, and very rarely indeed before the case was ready for decision upon the merits in that court. But the question at what stage of the proceedings, and under what circumstances, the case

should be required, by *certiorari* or otherwise, to be sent up for review, is left to the discretion of this court, as the exigencies of each case may require."

The powers of certification vested in the Superior Court by the court and practice act, section 339, are as follows:

"SEC. 339. If, upon making any interlocutory decree or order, or if otherwise in the course of the proceedings in any cause, any question of law shall arise which in the opinion of the court is of such doubt and importance, and so affects the merits of the controversy, that it ought to be determined by the supreme court before further proceedings, the superior court may certify such question to the supreme court for that purpose, and stay all further proceedings except such as are necessary to preserve the rights of the parties:"

This power is very similar to that conferred upon the United States Circuit Court of Appeals by the act of March 3, 1891, c. 517, as quoted in the case cited above.

In view of the provisions of the statutes above quoted, it is quite clear that there is a close analogy between the powers conferred upon the Supreme Court of the United States to review by *certiorari* certain cases "made final" in the United States Circuit Court of Appeals and the general and broader powers conferred upon the Supreme Court of Rhode Island.

Few other authorities in any way touching upon the main questions involved in this case have been called to the attention of the court by counsel, and few have been found by the court after a somewhat extended examination.

In our own State, from the adoption of the constitution in 1843 down to the adoption of article XII of the amendments thereto, in November, 1903, the Supreme Court had original and final jurisdiction in equity, so that there could be no occasion for the exercise of any extraordinary jurisdiction such as is here invoked. This case is, therefore, one of new impression so far as this State is concerned.

In other States it has seldom been attempted to invoke the exercise of such jurisdiction by writ of *certiorari* issued out of the court of final jurisdiction to an inferior court sitting in equity;

and the reason is quite plain; for it is most unusual that there should arise in an equity cause in an inferior court any error or abuse which will not be fully and adequately remedied upon appeal. Even in the few cases where such jurisdiction has been invoked, it has been generally found and decided that there was another and adequate remedy by appeal, or that the case made was one which did not warrant the exercise of such extraordinary relief, in the sound discretion of the court.

In *Berry* v. *Hardin*, 28 Ark. 458, a complaint in equity was filed to restrain the collection of a tax levied by a county court, and as ancillary to this relief a writ of *certiorari* was asked for to bring up and quash the proceedings of the county court in regard to the levy and collection of the tax. The complaint was dismissed for want of equity, and it was held that the court had no power to issue the writ of *certiorari* in equity, the matter not being of equitable cognizance; and that, even if the application had been made on the law side of the court, the writ would not have been issued on the grounds alleged in the complaint.

In *Payne* v. *McCabe*, 37 Ark. 318, the right of appeal furnished all the remedy needed to protect the right of the petitioner, and the writ was refused on that ground.

In *Sanders* v. *Plunkett*, 40 Ark. 507, the act complained of was the dissolution of a temporary injunction by the same chancellor who had ordered it, was held to be within the discretion of the chancellor, under the statute, and the writ was refused.

In *Re Haney*, 14 Wis. 417, attempt was made to review, by means of a writ of *certiorari*, the proceedings of a Circuit Court in Chancery, granting leave to sell the real estate of an infant. It was held that the interests of the infant in the court below were duly protected by guardians lawfully appointed, that the infant was bound by the proceedings, and that it was not a proper case for extraordinary relief by *certiorari*.

The last case cites *Peters* v. *Peters*, 8 Cush. 529, where the proceedings attempted to be called in question were of the same character as in *Re Haney, supra*, in a Probate Court which had granted leave to sell real estate of a minor, whose

guardian *ad litem,* duly appointed, assented to the proceedings sought to be quashed. It was held that the statutes granting appeals from Probate Courts to the Supreme Judicial Court furnished all the remedy required in such probate cases; and that in the case at bar the infant was duly protected and was bound; and the writ was refused.

In *Kern's Adm'r.* v. *Foster,* 16 Ohio, 274, it was held that an appeal lay from the order of the Court of Chancery, confirming a sale of lands made under a previous decree of that court, and therefore *certiorari* was not a proper mode of bringing the question of the legality of such order of confirmation before the Supreme Court.

In *Galloway* v. *Stophlet,* 1 Ohio St. 434, the writ was asked for to review an order overruling exceptions to the admission of a deposition taken for use in equity in the court below. The court very properly refused to interfere in such a matter while the case was still pending below.

In *Gilliland* v. *Sellers,* 2 Ohio St. 223, the Supreme Court refused to interfere by *certiorari* with certain proceedings in a Probate Court, part of which it held to be absolutely void and part of which it held to be within the exclusive jurisdiction of that court, and not subject to revision.

Although in each of the above cases the writ was refused, yet it nowhere appears broadly stated that in no case will the court of final revisory, appellate, and supervisory jurisdiction interfere by *certiorari* directed to an equity court. On the contrary, such reservations appear in several of them as to imply that in a proper case such writ may be issued, although its issue will be very infrequent and only where no other adequate remedy exists.

Somewhat analogous to the jurisdiction here invoked, and similar in principle, though not in all respects similar, owing to the differences between the relations of our courts, governed as they are by constitutional provisions and statutes, and the relations between the high Court of Chancery and the inferior courts of equity jurisdiction in England, was the practice, well recognized in the English Court of Chancery, of entertaining a *certiorari* bill, which is described as follows:

"CERTIORARI BILL.

"This species of bill derives its name from a special writ of *certiorari* being prayed for the purpose of removing a cause already commenced in an inferior court of equity from that into the Court of Chancery.

"And the prayer of this bill is grounded upon a suggestion necessarily arising from one or some of the following circumstances: that by means of the limited jurisdictions of the court, or by reason that the cause is without the jurisdiction of the inferior courts, or that the witnesses live out of the jurisdiction, or that the defendants do, and are not able by age or infirmity, or the distance of place to follow the suit; or that upon some substantial reasons shewn, equal and impartial justice to the parties is not likely to be obtained in the inferior court: and for this purpose the bill should state the proceedings in the court below; the incompetency of that court to decide between and administer justice to the parties, and pray the writ of *certiorari.*"    Harrison's Chancery, pp. 100–1.   See also Bacon's Abr. p. 166; Williams Law Dict. tit. "*Certiorari;*" Jacob's Law Dict. tit. "*Certiorari.*"

It thus appears that from very early times in England there obtained a practice of *certiorari* in equity closely analogous in principle to the practice at common law, though of much less frequent application.

Upon the case, therefore, as made by the petition herein, we are of the opinion that the petition sets forth such matters as may be properly reviewed, and should be reviewed, by this court by means of its writ of *certiorari*, and that this court has full power to issue such writ in accordance with the prayer of the petition.

Let the writ of *certiorari* issue accordingly.

*Hugh J. Carroll*, for petitioner.
*James L. Jenks*, for certain respondents.
*Lellan J. Tuck*, for respondent, Lucy J. Hyde.