Debra N. **PALMISANO** et al.

v.

Bernard J. **TOTH** et al.

No. 92–350–M.P.

Supreme Court of Rhode Island.

May 7, 1993.

Thomas J. Grady, Westerly, for plaintiffs.

Paul V. Reynolds, Kevin Cain, William Landry, Providence, for defendants.

## OPINION

MURRAY, Justice.

This case is before us on the defendants' petition for certiorari, seeking review of a Superior Court order that granted the plaintiffs' motions to compel the production of documents relating to the defendants' personal financial information and to compel the defendants to answer similar questions at reconvened depositions. The defendants also ask this court for guidance regarding procedures to be followed during the course of discovery when a party seeking punitive damages requests disclosure of another's financial assets.

The facts of the underlying cause of action, as adduced by the pleadings, are as follows. On May 11, 1990, plaintiff Debra N. Palmisano (Debra) was employed as a waitress by Amscot, Inc., doing business as Old Mountain Lanes, a South Kingstown, Rhode Island, bowling alley with an attached restaurant and bar. On that evening she finished her work shift at approximately 10:10 p.m. and walked from the establishment toward her car, which was parked in a parking lot owned and operated by Bank of New England–Old Colony, N. A. To get to her car, she had to traverse a portion of a parking lot owned and operated by defendant Clock Place Associates (Clock Place), a Rhode Island partnership. While walking in a dark, unlit section toward the rear of Clock Place's premises, Debra was viciously attacked and assaulted by a person engaged in robbing a store situated on Clock Place's property.

As a result of the attack, Debra alleges, she suffered and continues to suffer from physical and psychological injuries; her husband, Christian G. Palmisano, alleges that he has suffered from a loss of consortium. The plaintiffs filed an action in Washington County Superior Court on March 8, 1991, against Clock Place and its four partners, Bernard J. and Robert L. Toth (the Toths), Leonard Terrien (Terrien), and Lawrence C. LeBlanc (LeBlanc), individually and as general partners. The four counts against defendants allege that they were negligent (1) in failing to provide adequate lighting in the Clock Place parking lot, (2) in failing to make available respective parking areas for employees of Old Mountain Lanes as required by an agreement entered into by Clock Place, (3) in failing to warn or to protect Debra against the dangerous condition of Clock Place's parking area, and (4) in failing to provide adequate security on or about the Clock Place premises.

On March 17, 1992, plaintiffs filed a motion to amend the complaint in the form of a second amended complaint. The plaintiffs' motion was granted on April 22, 1992, and the second amended complaint was filed the next day. In addition to the aforementioned four counts, plaintiffs now seek punitive damages, asserting that "Defendants' conduct, individually and jointly, rises to the level of willfulness, recklessness or wickedness, as to amount to criminality, which for the good of society and warning to the individuals, ought to be punished."

In furtherance of their request for punitive damages, plaintiffs sought information relating to defendants' personal finances, first by way of depositions and next by way of extensive requests for production directed to each named defendant. The three defendants who had been deposed, the Toths and LeBlanc, each refused to answer questions asked by plaintiffs' coun-

sel that ventured into the areas of his personal finances and defendant Clock Place's financial condition.

The requests for production, each filed on April 24, 1992, sought inter alia personal financial statements submitted to all financial institutions, deeds to all real estate holdings and related mortgages, certain Internal Revenue Service forms, certificates or statements evidencing investments, insurance policies, and registration certificates of items of tangible personal property such as automobiles, boats, and airplanes. On May 14, 1992, each defendant objected to plaintiffs' request for production on the grounds that plaintiffs' complaint failed to state a claim upon which relief may be granted with respect to punitive damages, thereby rendering this information irrelevant and immaterial and not designed to lead to the discovery of admissible evidence. The defendants also contend that this request for production is premature, that awarding punitive damages under Rhode Island law violates defendants' constitutional rights to due process, and that the request is so broad as to be burdensome in nature.

In response to defendants' objections, plaintiffs filed motions to compel each defendant to produce the documents previously requested and to compel the Toths and LeBlanc to answer certain questions at future depositions. These matters were heard by a Superior Court justice on June 15, 1992, as were defendants' motions for a separate trial and for a stay of discovery in regard to defendants' financial conditions pending the resolution of plaintiffs' claim for compensatory damages and a determination by the trial justice of whether plaintiffs are eligible for punitive damages. All four motions were continued until July 3, 1992, at which time defendants' motions were denied and plaintiffs' motions to compel production of documents and to compel three defendants to answer questions pertaining to financial assets at future reconvened depositions were granted.

Prior to the appropriate order's being entered by the trial justice, defendants filed with this court a petition for writ of certiorari and a motion for a stay of the Superior Court order. A single justice of this court stayed the discovery order on July 9, 1992, pending review of defendants' petition for certiorari by the full court when it reconvened in September 1992. We granted certiorari on September 24, 1992, and ordered the stay to remain in effect.

The issues raised by defendants question the fairness as well as the constitutionality of Rhode Island's law on punitive damages. The defendants also assert that plaintiffs have not established a case that would warrant the imposition of punitive damages. Lastly defendants contend that in no circumstances are defendant Terrien's financial records discoverable because he had no active involvement in any wrongful act of the partnership and that, therefore, punitive damages cannot be imposed on him vicariously. We shall address each issue in turn.

I

The defendants maintain that to order discovery of confidential information concerning one's personal finances solely because the opposing party has demanded punitive damages absent some factual basis for doing so would subject a party to annoyance, undue expense, embarrassment, and oppression. The defendants further contend that this practice would allow an opposing party to use the discovery process to harass and cause undue hardship on a defendant. Hence defendants suggest that this court adopt procedures through which a plaintiff might make a showing that he or she is entitled to punitive damages before a defendant is required to disclose his or her personal financial information.

Prior to any exposition of the necessary procedures to be followed before permitting discovery into one's personal finances, we consider the status of punitive damages in Rhode Island. The nature of punitive or exemplary damages is twofold: to punish the tortfeasor whose wrongful conduct was malicious or intentional and to deter him or her and others from similar

extreme conduct. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616, 632 (1981); *Greater Providence Deposit Corp. v. Jenison,* 485 A.2d 1242, 1244 (R.I.1984); *Abbey Medical/Abbey Rents, Inc. v. Mignacca,* 471 A.2d 189, 195 (R.I.1984).

This court and others have held that the party seeking punitive damages has the burden of producing " 'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished.' " *Sherman v. McDermott,* 114 R.I. 107, 109, 329 A.2d 195, 196 (1974). *See also Emery–Waterhouse Co. v. Rhode Island Hospital Trust National Bank,* 757 F.2d 399, 407 (1st Cir.1985); *Jenison,* 485 A.2d at 1244. This court has stated that for punitive damages to be awarded there must be a showing that the defendant acted with malice or in bad faith. *Morin v. Aetna Casualty and Surety Co.,* 478 A.2d 964, 967 (R.I.1984). Similarly, the United States District Court for the District of Rhode Island has stated that under Rhode Island law one must allege that the other party acted with the intent to cause harm. *See Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.,* 778 F.Supp. 101, 107 (D.R.I. 1991); *Carvalho v. Coletta,* 457 A.2d 614, 616 (R.I.1983).

■ The standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages. *Davet v. Maccarone,* 973 F.2d 22, 27 (1st Cir.1992). An award of punitive damages is considered an extraordinary sanction and is disfavored in the law, but it will be permitted if awarded with great caution and within narrow limits. *D'Amato v. Rhode Island Hospital Trust National Bank,* 772 F.Supp. 1322, 1324 (D.R.I.1991).

■ Whether a party seeking punitive damages has met the high standard imposed on such an award is a question of law for the trial justice. *Id.* at 1325; *Peckham v. Hirschfeld,* 570 A.2d 663, 668 (R.I.

1990); *Morin,* 478 A.2d at 967; *Sherman,* 114 R.I. at 108, 329 A.2d at 196. Once a trial justice determines that there are adequate facts to support an award of punitive damages, then the question of whether and to what extent the party is entitled to punitive damages is in the discretion of the trier of fact. *Borden v. Paul Revere Life Insurance Co.,* 935 F.2d 370, 382 (1st Cir. 1991); *Sarkisian v. The NewPaper, Inc.,* 512 A.2d 831, 836 (R.I.1986); *Morin,* 478 A.2d at 967; *Sherman,* 114 R.I. at 108–09, 329 A.2d at 196.

■ The ultimate award of punitive damages as fixed by a jury, however, is not entirely insulated from further scrutiny by the trial justice. *Sarkisian,* 512 A.2d at 836. For instance, the trial justice may set aside a punitive-damage award if the award "clearly appears to be excessive, or to represent the passion and prejudice of the jury rather than their unbiased judgment." *Zarrella v. Robinson,* 460 A.2d 415, 418–19 (R.I.1983) (quoting *McFetters v. Cardone,* 47 R.I. 144, 146, 131 A. 385, 385 (1926)). If the trial justice determines that the punitive-damage award is excessive, he or she may order a new trial on damages alone unless the plaintiff agrees to a remittitur. *See Mazzaroppi v. Tocco,* 533 A.2d 203, 204 (R.I.1987). Additionally the trial justice may review this award as he or she would review an award for pain and suffering and thereby "disregard the jury's verdict on a motion for a new trial if the award 'shocks the conscience or clearly demonstrates that the jury * * * proceeded upon a clearly erroneous basis in arriving at its award.' " *Zarrella,* 460 A.2d at 418 (quoting *Wood v. Paolino,* 112 R.I. 753, 757, 315 A.2d 744, 746 (1974)). In no event, however, may a jury award be reviewed for inadequacy, nor may a trial justice review a jury's failure to award any punitive damages. *Dias v. Vieira,* 572 A.2d 877, 879 (R.I.1990).

As early as 1926 our predecessors on this court concluded that the financial ability of a defendant is always a matter of vital consideration in estimating the amount of punitive damages that should be awarded. *McFetters v. Cardone,* 47 R.I. 144, 147, 131

A. 385, 385–86 (1926); *Hargraves v. Ballou,* 47 R.I. 186, 190, 131 A. 643, 646 (1926). The obvious rationale for permitting the trier of fact to hear evidence regarding a defendant's financial condition is to afford the jury or the trial justice a point of reference in assessing an amount of punitive damages that would adequately serve as a punishment. *Vollert v. Summa Corp.,* 389 F.Supp. 1348, 1351–52 (D.Haw.1975).

The difficulty in permitting a defendant's financial condition to be considered in assessing an award of punitive damages arises as early as the discovery stage of litigation. Just as plaintiffs in the case at bar have done, a party to an action in which punitive damages are sought will attempt to learn the extent of the defendant's wealth through discovery whereas such information would be otherwise immaterial and irrelevant to the determination of the defendant's liability. However, this discovery request invades the traditionally private domain of one's personal finances and oftentimes inconveniently seeks disclosure of unnecessary specific details. *Gierman v. Toman,* 77 N.J.Super. 18, 23, 185 A.2d 241, 244 (1962). Particularly troublesome to defendants in this case and in other cases is the likelihood of a defendant's being prejudiced personally and professionally by the disclosure that he or she possesses considerable assets and of such evidence's tainting the jury's determination of compensatory damages. 1 J. Ghiardi & J. Kircher, *Punitive Damages Law and Practice,* § 5.36 at 48 (1985).

In light of the prejudicial nature of requiring a defendant to reveal his or her financial worth, both federal and state courts throughout the country have considered various means by which a defendant would be protected from an unwarranted invasion of privacy and harassment while allowing a plaintiff limited inquiry into that defendant's financial condition. *See generally* James McLoughlin, Annotation, *Necessity of Determination or Showing of Liability for Punitive Damages Before Discovery or Reception of Evidence of Defendant's Wealth,* 32 A.L.R. 4th 432 (1981). The circumstances in which some jurisdictions have required a defendant to disclose his or her financial condition range from a special verdict during the trial on the liability issue, which concludes that the defendant is liable also for punitive damages, to a showing by a plaintiff that a prima facie case exists for punitive damages, to a less rigid showing by a plaintiff that evidence exists that warrants the imposition of punitive damages. To the contrary, other courts have altogether refused to adopt such preliminary requirements and instead have found that a simple allegation and claim for punitive damages renders information relating to punitive damages as discoverable as information pertaining to liability.

The strictest and seemingly most burdensome procedure a plaintiff must follow before being permitted to inquire into a defendant's financial condition is that espoused by the Appellate Division of the New York Supreme Court. In *Rupert v. Sellers,* 48 A.D.2d 265, 272, 368 N.Y.S.2d 904, 912 (1975), the court stated that the plaintiff would not be permitted to inquire into the defendant's net worth until the jury rendered a special verdict that the plaintiff was entitled to such damages after a trial on the defendant's liability for compensatory damages. The court also required that the discovery be conducted expeditiously so that the evidence might be presented to the same jury that determined liability. *Id.* at 273, 368 N.Y.S.2d at 913. Although this bifurcation of the liability issue and punitive-damage issue ensures that the defendant's financial affairs will not be inadvertently presented during the trial on the liability issue, we believe that this procedure may unnecessarily lengthen the judicial process. We turn, then, to the next procedure.

In Colorado, New Jersey, and Wyoming, courts have determined that there must be prima facie proof of a defendant's liability for punitive damages before his or her financial information may be discovered by an opposing party. *See Leidholt v. District Court,* 619 P.2d 768 (Colo.1980); *Gierman v. Toman,* 77 N.J.Super. 18, 185 A.2d 241 (1962); *Campen v. Stone,* 635 P.2d 1121 (Wyo.1981). In *Campen,* the

Wyoming Supreme Court set forth a procedure for the discovery and the subsequent presentation of evidence of a defendant's financial status. We are concerned at this juncture with the discovery issue only. The first two steps in *Campen* are as follows:

"1. The plaintiff may claim in his [or her] complaint a right to punitive damages and then seek pretrial discovery of a defendant's wealth.

"2. Defendant may move for a protective order requiring the plaintiff to make a prima facie showing to the trial court that a viable issue exists for punitive damages. Upon such a showing, the pretrial discovery would be allowed." *Campen*, 635 P.2d at 1132.

Because we are mindful of the rights of a defendant to be protected from undue harassment, embarrassment, and oppression, we find that a defendant's interests will be best served if we adopt a clear standard to be satisfied by a plaintiff before permitting him or her to inquire into prejudicial information.

We believe that to require a plaintiff to make a prima facie showing that a viable issue exists for awarding punitive damages is a moderate and the most fair avenue for providing a plaintiff with the opportunity to discover relevant information while protecting a defendant's right to privacy. If we demand that a plaintiff demonstrate at the outset that the defendant acted with intent to cause harm, *see Wilson Auto Enterprises, Inc.*, 778 F.Supp. at 107, with malice, or in bad faith, *see Morin*, 478 A.2d at 967, we ensure that a defendant's conduct is so wrongful and egregious as to warrant punishment and deterrence before ordering the defendant to disclose his or her personal financial information. Once the plaintiff establishes in an evidentiary hearing before the trial justice that a prima facie case for punitive damages exists, he or she is then afforded the opportunity to proceed with discovery into the defendant's financial worth to the extent necessary to address the issue of punitive damages, namely, the defendant's net worth or annual income, without posing an undue burden on the defendant.

We believe that determining whether a plaintiff has an adequate legal and factual basis to support a claim for punitive damages could not readily be determined on an objection to a motion to compel discovery. We are aware that the motion-calendar justice is not in a position to conduct extensive evidentiary hearings. Consequently, in the exercise of our plenary revisory powers, we shall fashion a remedy in order to create a procedure for such an evidentiary hearing. *See Cheetham v. Cheetham*, 121 R.I. 337, 342, 397 A.2d 1331, 1334 (1979); *Hyde v. Superior Court*, 28 R.I. 204, 212, 66 A. 292, 295 (1907).

What then should be the remedy? If a defendant believes that a punitive-damage claim cannot be supported factually and legally, the defendant may move to strike the claim for punitive damages. This motion will not be in strict accord with Rule 12(f) of the Superior Court Rules of Civil Procedure, but instead it will have the appropriate expanded function to test by an evidentiary hearing the propriety of a claim for punitive damages. The filing of such a motion to strike will have the effect of deferring all discovery relating to the punitive-damage claim until a justice of the Superior Court has ruled upon said motion. The motion may be referred to a justice of the Superior Court on whatever calendar the presiding justice of that court determines appropriate. The plaintiff may present evidence in opposition to the motion sufficient to constitute a prima facia showing of his or her eligibility for punitive damages, which would be determined in accordance with our standards that the defendant acted so willfully, maliciously, or recklessly as to amount to conduct bordering on criminality. *Sherman*, 114 R.I. at 109, 329 A.2d at 196. The defendant may cross-examine witnesses and may introduce evidence that tends to negate the showing made by the plaintiff. At the conclusion of said hearing, the justice will determine in accordance with our holding in *Morin* whether the evidence presented as a matter of law and fact warrants submission to a

trier of fact (either judge or jury) of the punitive-damage issue. If the justice finds that such a showing has not been made, he or she will strike the claim for punitive damages. If the justice finds that the showing is adequate as a matter of law to justify the submission of the issue of punitive damages to the trier of fact, he or she will deny the motion to strike. These determinations by a justice of the Superior Court may be reviewed in the discretion of this court on a petition for certiorari.

If the motion to strike is denied, then the plaintiff may proceed to seek discovery relating to the wealth or ability of the defendant to respond to a punitive-damage award insofar as such evidence may be relevant to a determination of the amount adequate to deter the defendant from similar activities in the future. If the motion to strike is granted, then no discovery will be permitted on the issue of the defendant's ability to respond to punitive damages.

Now, with respect to defendants' contention in the instant case that plaintiffs have not established a case that would warrant the imposition of punitive damages, we find that arguments in support of this assertion may be presented to the trial justice in the course of a forthcoming evidentiary hearing on whether defendants acted with malice, with intent to cause harm, or in bad faith. We note that in the July 1992 hearing on plaintiffs' and defendants' motions, the trial justice indicated that he would not make any factual findings regarding punitive damages. Likewise we shall not make such factual findings at this juncture but instead leave the question to the determination of the trial justice presiding over the evidentiary hearing on whether a prima facie case exists for the imposition of punitive damages.

## II

In respect to the constitutional issue raised by defendants in their petition for certiorari, we decline to address this issue on its merits in the posture in which this case has been presented to us.

We shall only observe that the protection given by settled Rhode Island decisional law to defendants significantly exceeds that afforded by Alabama courts, as approved by the Supreme Court in *Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). A result such as that obtained in *Haslip* could never have occurred under Rhode Island law. At the outset our rule would not permit a jury to award punitive damages on a *respondeat-superior* theory. *See Lake Shore & Michigan Southern Railway Co. v. Prentice,* 147 U.S. 101, 114–15, 13 S.Ct. 261, 265–66, 37 L.Ed. 97, 104 (1893) (quoting Mr. Justice Brayton in *Hagan v. Providence & Worcester Railroad Co.,* 3 R.I. 88, 90–91 (1854)).

No further analysis of *Haslip* is necessary or desirable on this record. We shall, of course, entertain challenges to any award for punitive damages on common law or constitutional grounds when such issues are properly presented to us.

## III

The last issue raised by defendants is whether the trial justice erred in ordering defendant Terrien to produce documents regarding his financial status when he had no active involvement in the alleged reckless acts of his partners. The defendants thus conclude that because punitive damages cannot be awarded vicariously in situations in which the principal has not actually participated in the wrongful act of the agent, Terrien's financial records are irrelevant and undiscoverable. The plaintiffs, on the other hand, argue that the Supreme Court's decision in *Haslip* governs this issue and that Terrien would be vicariously liable under the theory of *respondeat superior* for the punitive damages arising out of his partners' wrongful acts. Additionally plaintiffs suggest that the Rhode Island Uniform Partnership Act, G.L.1956 (1992 Reenactment) §§ 7–12–12 through 7–12–55, contemplates the imposition of vicarious liability for punitive damages. We disagree with plaintiffs.

Our rule on vicarious liability is not in any way governed by or even persuaded by

the Supreme Court's determination in *Haslip*. All the Court held in *Haslip* was that the Alabama procedures did not shock the conscience of the majority sufficiently to constitute a denial of due process. This does not vary or expand the case law in this jurisdiction relating to the award of punitive damages.

However, since we are remanding this case to the Superior Court for an evidentiary hearing, we shall leave it to a justice of that court to determine whether the plaintiffs are able to make a prima facie showing of Terrien's involvement vel non in any act of wickedness, recklessness, or criminality.

For the foregoing reasons the defendants' petition for certiorari is granted. The order of the Superior Court is quashed, and the case may be remanded to the Superior Court for further proceedings in accordance with this opinion.