DECISION
Before this Court is the motion of Hometown Properties, Inc., Homevest Inc. (which has since merged with Hometown Properties, Inc.), Charles H. Gifford III, Michael L. Baker and Edward B. Mancini (plaintiffs) to strike Nancy Hsu Fleming's (defendant) counterclaim for punitive damages. The plaintiffs assert that the defendant has not made out a prima facie case for punitive damages.
Facts/Travel
On April 12, 1992, the defendant, a resident of North Kingstown, wrote a letter to the director of the Rhode Island Department of Environmental Management (DEM) and several other state and federal officials advocating the closure of the plaintiffs' North Kingstown landfill for its contamination of groundwater. The plaintiffs, through legal counsel, requested the defendant to provide specific facts and documents backing up her letter, or to issue a retraction to the officials who were sent the letter. The defendant refused to comply with the plaintiffs' request, neither providing documented facts nor issuing a retraction of her letter.
On December 2, 1992, the plaintiffs commenced the instant action for defamation and tortious interference with contactual relations. The defendant filed a motion to dismiss pursuant to Super. Ct. R. Civ. P. 12(b)(6), arguing that she was immune from tort liability for her statements in the letter under the Rhode Island and United States Constitutions. On April 19, 1993, the Superior Court denied the defendant's motion to dismiss. Subsequently, the General Assembly enacted an anti-SLAPP ("Strategic Litigation Against Public Participation") statute. § 9-33-1 et seq. The defendant filed another motion to dismiss, asserting that she was protected from tort liability under the anti-SLAPP statute. The motion judge passed on the matter. On February 24, 1994, the Attorney General intervened on behalf of the defendant. On May 25, 1994, the defendant renewed her motion to dismiss under the anti-SLAPP statute and supplemented her motion with scientific reports and government documents. The Superior Court again denied her motion finding that the defendant was not absolutely immune from tort liability for her statements. The Superior Court also decided that the defendant had failed to demonstrate that she was part of the protected class of the anti-SLAPP statute.
The defendant appealed this decision to the Rhode Island Supreme Court on October 17, 1994. The Supreme Court quashed the decision of the Superior Court and instructed the Superior Court to enter summary judgment for the defendant. Hometown Properties,Inc. v. Fleming, 680 A.2d 56 (R.I. 1996). The Supreme Court found that the defendant's statements constituted government petitioning activity which was immune to the plaintiffs' civil action pursuant to § 9-33-2 (anti-SLAPP statute). Id. at 64. The court found that "sham" petitioning activity which was objectively baseless with no reasonable chance of success was not protected under the anti-SLAPP statute. Id. at 60. However, the Supreme Court decided in this case that the defendant Fleming did not engage in "sham" petitioning and thus, was immune to the plaintiffs' action. Id. at 64.
On remand, the defendant was granted attorney fees and costs on February 14, 1997. On March 18, 1997, the defendant moved for entry of final judgment and the plaintiffs objected to the motion. The defendant did not press forward with the motion for entry of final judgment. On September 15, 1997, the defendant amended her answer and counterclaim, requesting compensatory and punitive damages against the plaintiffs, as allowed under §9-33-2(d) for a defendant who has been found immune to civil suit for petitioning activity. On February 9, 1998, the plaintiffs filed a Motion to Strike Claim for Punitive Damages and Assign for Evidentiary Hearing as specified in Palmisano v. Toth,624 A.2d 314 (R.I. 1993). The defendant objected to the plaintiffs' Motion to Strike Claim for Punitive Damages on February 17, 1998. This Court held an evidentiary hearing on the issue of punitive damages pursuant to the requirements of Palmisano, supra, on March 10, 1998.
At the hearing, the defendant testified that she had concerns about the ground drinking water because the landfill is situated above a groundwater acquifer. The defendant testified that she based her statements against the landfill "on EPA reports and other experts that have investigated the landfill." When the defendant received a letter from the plaintiffs' legal counsel requesting supporting documentation or a retraction of the statements, she believed that the plaintiffs were trying to silence her and inhibit her effort to petition government officials. In the letter dated September 8, 1992, the plaintiffs asserted that the defendant's statements were false and defamatory per se and constituted improper interference with the landfill's clients. (Defendant's Exhibit G). The plaintiffs stated in the letter that the statements caused substantial damages to the business reputations of their clients. (Defendant's Exhibit G). The plaintiffs promised to pursue formal legal remedies if the defendant did not provide supporting facts or a retraction. (Defendant's Exhibit G). The plaintiffs reiterated the threat of legal action in a subsequent letter to the defendant dated September 29, 1992. (Defendant's Exhibit I). The defendant testified that she first heard about the plaintiffs' lawsuit against her from a neighbor who read about it in the newspaper. She said that she "was very surprised [and] very upset" when the plalntiffs served her with the lawsuit.
Linda C. Cole (Cole) and Marguerite Neubert (Neubert) also testified about letters they had received from the plaintiffs in response to statements they had made against the landfill. Cole testified that some statements attributed to her in a newspaper article which were critical of the landfill were inaccurate. She became "very upset" when she received a letter from the plaintiffs' attorneys threatening her with a lawsuit. The letter alleged that Cole's statements were defamatory and requested Cole to affirm in writing that she did not make such statements or provide specific facts to support her statements. (Defendant's Exhibit L). Cole said that she sent a letter to the Standard Times newspaper to point out the inaccuracies in the article and also sent a copy of this letter to the plaintiffs. Marguerite Neubert testified that the plaintiffs also sent her a letter in regard to statements attributed to her in the same newspaper article. This letter similarly alleged that Neubert had made defamatory statements and promised to pursue all appropriate legal remedies if Neubert did not affirm in writing that she did not make such statements or provide specific facts to support her statements. (Defendant's Exhibit N). Neubert and Cole both signed the reply letter to the Standard Times pointing out misquotes and inaccuracies in the newspaper article.
Next, Michael Rubin, an Assistant Attorney General testified that the Attorney General's Office filed an amicus brief on behalf of the defendant and later intervened on the defendant's side in the instant action. Finally, plaintiff Michael L. Baker, a principal shareholder and director of Hometown Properties Inc. testified. Baker admitted that the plaintiffs had sent a letter to Thomas Beidleman, asking him to clarify assertions he made that the landfill conducted operations after hours. He also testified that he was personally aware of the defendant's letter in regards to the plaintiff's landfill. Baker testified that he believed the defendant's statements were defamatory and implied criminal conduct on the part of the plaintiffs because the defendant's letter asserted that the landfill contained hazardous waste. Baker said that he and the plaintiff's were concerned about maintaining their landfill's license, and this motivated them to respond to the defendant. Baker stated that he and the plaintiff's were not motivated by a desire to stifle the defendant's free speech and petitioning rights. Baker also asserted that he had no knowledge of the defendant sending copies of her letter to the plaintiffs' suppliers or competitors. Baker said that the plaintiffs' action for tortious interference with contractual relations was in regard to interference with the plaintiffs' license with DEM. However, Baker mentioned that the plaintiffs did not send a letter to the director of DEM to clear up any negative impressions DEM may have had from the defendant's statements, but instead wrote to the defendant.
On May 12, 1998, this Court heard oral arguments from the parties. The plaintiffs argue that the defendant has failed to present a prima facie case that the plaintiffs acted maliciously and committed conduct amounting to "criminality." Thus, the plaintiffs argue that punitive damages are not appropriate and the defendant's counterclaim for punitive damages should be stricken. The defendant argues that her punitive damages claim should go to the jury, as she need only present evidence that the plaintiffs' action was frivolous or brought with the intent to harass or inhibit her right to petition the government.
Standard for Punitive Damages
Fleming's claim for punitive damages against Hometown is derived from the provisions of the Anti-SLAPP statute. R.I. G.L. § 9-33-2(d) provides that:
 If the court grants such motion asserting the immunity established by this section, or if the party claiming lawful exercise of his or her right of petition or of free speech under the United States or Rhode Island Constitutions in connection with a matter of public concern is, in fact, the eventual prevailing party at trial, the court shall award the prevailing party costs and reasonable attorney's fees, including those incurred for the motion and any related discovery matters. The court shall award compensatory damages and may award punitive damages upon a showing by the prevailing party that the responding party's claims, counterclaims, or cross claims were frivolous or were brought with an intent to harass said party or otherwise inhibit said party's exercise of its rights to petition or free speech under the United States or Rhode Island Constitution . . .
Fleming argues that her claim for punitive damages is derived from the standard enunciated in the statute. Fleming submits that a prima facie case for punitive damages is therefore made when Fleming's evidence indicates that Hometown's lawsuit against her was frivolous, or was brought with an intent to harass said party, or otherwise inhibit said party's exercise of her right to petition or right of free speech. Fleming asserts that contrary to Hometown's claims, she does not have to meet the standard set forth by the Rhode Island Supreme Court in Palmisano.
Hometown contends that the fact that Fleming's claim for punitive damages is based on the statute does not alter the standard for an award of punitive damages. Hometown's basis for this contention is two-fold. First, Hometown contends that recent cases construing legislation which allow for such an award have adhered to the rigorous standard set forth in Palmisano. Second, Hometown asserts that the specific language of § 9-33-2(d) does not warrant any modification of the standard for imposing punitive damages.
In reviewing the merits of Hometown's claim, this court finds their arguments unpersuasive, and finds that the standard for determining the issue of punitive damages is derived from the anti-SLAPP statute. First, Hometown's contention that recent cases have used the Palmisano standard in construing legislation which allows an award of such damages is flawed. Hometown relies on Washburn v. Rite Aid Corp., 695 A.2d 495 (R.I. 1997). InWashburn, the Court found that where a person violates the provisions of the Confidentiality Act, such persons "may be held liable for actual and exemplary damages." 695 A.2d at 499. The Court in Washburn, citing Palmisano, stated"
 Because Rite Aid violated the Confidentiality Act by disclosing plaintiff's confidential health-care information to an unauthorized person in a manner not allowed by law, it is liable to her for any actual damages she sustained as a result of this disclosure, and, if the requisite malice amounting to criminality circumstances were present, for any exemplary damages that the fact finder deems appropriate.
Hometown therefore concludes that in a statutory context malice amounting to criminality must be present to justify an award of punitive damages.
This Court finds Washburn to be distinguishable from this case. This Court recognizes that generally punitive damages are disfavored in the law. This Court further recognizes that the general standard for punitive damages is the standard set forth in Palmisano: "that the party seeking punitive damages has the burden of producing evidence of such willfulness, recklessness or wickedness on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished." Id. at 314. However, inWashburn where there was no standard in the statute for the awarding of punitive damages, the Court correctly used thePalmisano standard. This is not to imply that Palmisano is a default standard. On the contrary, it is anything but. The General Assembly enacted the anti-SLAPP statute in order to protect the "full participation by persons and organizations and robust discussion of public concern" from the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." R.I.G.L. 1956 §9-33-1. It is the function of the courts to construe statutes. "In construing a statute, our task is to effectuate the intent of the legislature." D'Ambra v. North Providence School Committee,601 A.2d 1370, 1374 (R.I. 1992). By providing a standard for punitive damages in the statute, it is the finding of this Court that the intent of the Legislature was to deter and impose a greater punishment for SLAPP suits. Had the General Assembly intended for the standard to be Palmisano, then it could have taken numerous steps to ensure such use. Hometown argues that had the Legislature intended the Court to use some standard other than that reiterated in Palmisano, it no doubt would have plainly said so. This Court disagrees. The Supreme Court issued its opinion in Palmisano on May 7, 1993, and the statute was enacted on July 24, 1993. Thus the Palmisano standard was fresh in the minds of the Legislature. Yet, the Legislature did not use, or in any way remotely defer to, the language enunciated in the Palmisano standard. Rather, the Legislature enunciated it's own standard with respect to SLAPP suit cases in the anti-SLAPP statute. The Legislature took the additional step of providing a standard for SLAPP suit cases, thus the Palmisano standard cannot be used.
Hometown's assertion that the specific language of §9-33-2(d) does not warrant any modification of the standard for imposing punitive damages is also without merit. Hometown points to the provision that states the Court may make such an award as connoting a degree of discretion. It cites Greater ProvidenceDeposit Corp. v. Barnacle (In re Barnacle), 623 A.2d 445, 450 (R.I. 1993). Hometown asserts that the discretion to award punitive damages must be exercised in accordance with certain standards or run the risk of violating constitutional rights.Pacific Mutual Life Ins. Co. v. Haslip, 499 U.lS. 1, 18 (1991). Hometown's basis for this argument is that the Palmisano standard is well settled and therefore the discretion afforded must be exercised in accordance with that standard. Hometown continues by arguing that had the legislature intended the Court to exercise its discretion in accordance with some other standard, then it no doubt would have said so. This Court finds that the Legislature did say so. In the very same provision which Hometown argues affords this Court discretion, the Legislature has provided the guidelines for enacting that discretion.
 "This Court shall award compensatory damages and may award punitive damages upon a showing by the prevailing party that the responding party's claims, counter claims or cross claims were frivolous or were brought with an intent to harass said party or otherwise inhibit said party's exercise of it's right to petition or free speech under the United States or Rhode Island Constitution . . ."
Hometown's argument that there are no guidelines for the Court to enact its discretion is without merit.
This Court finds that Fleming's claim is derived from the standard enunciated in the statute. Thus, a prima facie case for punitive damages is made when Fleming's evidence indicates that Hometown's lawsuit against her was frivolous, or was brought with an intent to harass said party, or otherwise inhibit said party's exercise of her right to petition or free speech.
Prima Facie Evidence
The plaintiffs further argue that even under a statutory standard (§ 9-33-2(d)) for punitive damages, the defendant has failed to make a prima facie case. The plaintiffs argue that their claims were not frivolous, as the claims were valid under existing law at the time the complaint was filed. The plaintiffs state that the Supreme Court's decision in the instant case addressed a new issue in an unsettled area of law. Under such circumstances, the plaintiffs say that their belief in the merits of their claims was reasonable. The plaintiffs also argue that there was insufficient evidence to indicate the plaintiffs intended to harass the defendant or inhibit the exercise of her 1st Amendment rights. The plaintiffs state that they had a legitimate concern in protecting the reputation of the landfill business. The plaintiffs point out that the Supreme Court decision did not specifically determine whether the plaintiffs intended to harass or inhibit constitutional rights. According to the plaintiffs, the evidence does not show a pattern of behavior from which one could infer improper intent. The plaintiffs note that two witnesses called by the defendant, Cole and Neubert, were each contacted only once by the plaintiffs' attorneys, and both admitted that statements attributed to them were inaccurate.
The defendant argues that the plaintiffs' claims of defamation and tortious interference with contractual relations were frivolous as the Supreme Court found in favor of the defendant before trial. The defendant states that the plaintiffs did not even challenge the defendant's affidavit in the defamation suit. The defendant argues that the tortious interference claim was facially frivolous because the plaintiffs merely had a license with DEM and the defendant's letter did not interfere with any of the plaintiffs' clients, as there was no evidence that the plaintiffs' clients had ; knowledge of the letter. The defendant argues that the plaintiffs also filed a frivolous claim for punitive damages because they had no knowledge of malice on the part of the defendant. Finally, the defendant argues that the two letters sent by the plaintiffs' attorneys to the defendant evince an intent to silence the defendant. The defendant states that the initial letter from the plaintiffs accused the defendant of making per se defamatory statements and tortiously interfering with the plaintiffs' clients' business, without substantiating the allegations. The defendant avers that the plaintiffs made no attempt to resolve their concerns about the defendant's statements by speaking to her personally. The defendant argues that the plaintiffs' threats of filing lawsuits against others and other defamation suits filed by the plaintiffs show a pattern which indicates plaintiffs' intent to silence the defendant in the instant case.
Under Palmisano, supra, the party requesting punitive damages must make a prima facie showing of her eligibility for such damages in order to defeat an opposing party's motion to strike the punitive damages claim. Palmisano, 624 A.2d at 320. A successful prima facie showing warrants submission of the issue of punitive damages to the jury for consideration. Id. "Prima facie evidence is the amount of evidence, that, if unrebutted, satisfies the burden of proof on a particular issue." Delibero v.Swenson, 593 A.2d 42, 44 (R.I. 1991).
Section 9-33-2(d) allows the imposition of punitive damages for "frivolous" claims. A frivolous claims has been defined as an action with "no arguable basis for relief either in law or fact."Golden v. McCaughtry, 915 F. Supp. 77, 78 (E.D. Wisc. 1995) (analyzing frivolous standard for in forma pauperis action).
In the instant case, the plaintiffs' complaint included a count for tortious interference with contractual relations. "The basis elements of a claim based on tortious interference with a contractual relationship are: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference and (4) damages resulting therefrom."Jolicoeur Furniture Co., Inc. v. Baldelli, 653 A.2d 740, 752 (R.I. 1995) (citing Smith Development Corp. v. Bilow Enterprises,Inc., 112 R.I. 203, 211, 308 A.2d 477, 482 (1973)). This Court finds that prima facie evidence exists to indicate that the plaintiffs' claim for tortious interference of contractual relations was intentionally "frivolous." The plaintiffs did not have a contractual relationship with DEM. The defendant sent her letter only to DEM and other government officials. This Court finds that a trier of fact could conclude, based on the above facts, that the plaintiffs had no arguable basis of relief for tortious interference, as the defendant's conduct did not implicate any of the plaintiffs' contracts with clients. Plaintiff Baker testified that he had no knowledge of any of the landfill's suppliers or competitors receiving the defendant's letter. Baker also specifically testified that the claim for tortious interference with contractual relations was in regards to the landfill's relations with DEM. As the plaintiffs knew that they had no contractual relationship with DEM, the plaintiffs' claim for tortious interference with contractual relations was patently frivolous because the plaintiffs had no arguable basis for such a claim.
Punitive damages may also be awarded if the plaintiffs' claims were brought to inhibit the defendant's exercise of free speech. § 9-33-2(d). A tiler of fact may infer an intent to inhibit 1st Amendment free speech rights from the conduct of the wrongdoer. See Fishman v. Clancy, 763 F.2d 485, 488 (1st Cir. 1985) (a supervisor's unlawful termination of the plaintiff, subsequent threat to fire her after she was reinstated, and rejection of her application to another position provided the jury with sufficient evidence to find that the supervisor intentionally retaliated against the plaintiff for the exercise of her 1st Amendment rights).
In the instant case, this Court finds that the defendant had made a prima facie showing that the plaintiffs intended to inhibit the defendant's exercise of her right of free speech. The defendant received two letters from the plaintiffs threatening legal action if the defendant did not retract or provide further facts in support of her statements. Other persons also received similar letters threatening legal action for critical statements those persons made against the landfill. The plaintiffs called the defendant's statements defamatory per se and harmful to their clients' business reputations. A jury could find such language to be an attempt to chill or inhibit the defendant's right of free speech in regard to the landfill. Baker testified that the plaintiffs did not contact DEM about the perceived inaccuracies of the letter. A jury could infer from this testimonial evidence that the plaintiffs, first and foremost, wanted to silence the defendant. The plaintiffs carried out their threats against the defendant by filing the instant action. All of the foregoing evidence is sufficient for the jury to consider the issue of punitive damages in regard to whether the plaintiffs intended to inhibit the defendant's right of free speech.
Finally, this Court notes that although the defendant has presented evidence that she suffered only nominal damages from the plaintiffs' instant lawsuit, such nominal damages are enough to form the necessary predicate for an award of punitive damages.
Conclusion
This Court finds that the defendant has successfully rebutted the plaintiffs' motion to strike by offering prima facie evidence indicating that the plaintiffs' claims for tortious interference with contractual relations was frivolous and the plaintiffs' claims as a whole were brought with the intent to inhibit the defendant's exercise of free speech. The plaintiffs' Motion to Strike Claim for Punitive Damages is hereby denied. The issue of punitive damages may proceed to trial. Discovery on the issue of punitive damages may also proceed.
Counsel for defendant shall prepare the appropriate order for entry.