DECISION
Before this Court is the plaintiffs', Clifford McFarland and Read Lundy, Inc., Motion for Clarification and Reconsideration of this Court's decision of May 13, 1998. The defendants, Michael Brier, Michael Brier Company, and Consigned Systems, Inc., have filed an objection to the motion.
 FACTS and TRAVEL
This matter was heard by this Court sitting without a jury. In its decision of May 13, 1998, this Court found that Consigned Systems, Inc. (CSI) was guilty of misappropriation of trade secrets, that CSI and Michael Brier (Brier) were guilty of both the tortious interference with Read and Lundy's contractual relationships and interference with their business advantage, and that Brier had breached his professional duty. On the issue of breach of professional duty, this Court found that there was no evidence on the record that Brier Company disclosed any confidential information to CSI and that under § 5-3.1-2.3 (a) they were not a licensee and therefore could not be held directly liable. Decision at 17. The Court found that the plaintiffs failed to present any compelling evidence to justify piercing the corporate veil. Id.
On the issue of damages, this Court recognized that it is the defendants' burden to show that the plaintiffs failed to mitigate their damages. This Court found that the plaintiffs had a duty to mitigate, yet failed to do so. The Court stated that Read Lundy could have increased their profit margin to 35 percent during the period that CSI was enjoined from competing. Id. at 19. As such, this Court held that CSI and Brier were jointly and severally liable for lost profits in the amount of $67,936.
The Court denied the plaintiffs' request for damages which resulted from a loss in the value of Read Lundy stock. The Court found that plaintiffs failed to show damages with respect to the loss in the value of the stock with any reasonable degree of certainty. The Court also denied the plaintiffs' request for punitive and exemplary damages. The Court found that defendants' conduct was reprehensible, yet did not rise to the egregious level required for punitive damages. Id. at 21.
Lastly, the Court permanently restrained and enjoined the defendants "retaining, using, or disclosing directly or indirectly any of Read Lundy's customer lists or records, any information obtained from Read Lundy's customer lists or other records or any other information to which CSI, Brier, or Brier 
Company were privy by reason of their acquaintance with Bibeau, or in the case of the latter two, by reason of their employment by or position at Read Lundy which relates to Read Lundy's customers, customer product requirements, customer credit history, product costs, product sources, identity of vendors, capabilities of vendors and the availability of discounts from vendors." Id. at 22-23.
On May 27, 1998, the plaintiff's filed a Motion for Clarification and Reconsideration. The plaintiffs seek clarification and reconsideration in the following respects: (1) that the Court make a finding as to whether the defendants' violation of the Trade Secrets Act was "willful and malicious" within the meaning of the statute; (2) that if the Court finds any violation of the Trade Secrets Act by the defendants to have been "willful and malicious," that the Court award exemplary damages under G.L. 1956 § 6-41-3 (c); (3) that the Court make a finding as to the direct liability of Brier Company for violation of the Trade Secrets Act as opposed to liability premised upon "piercing the corporate veil"; (4) that the Court reconsider its conclusion that Read Lundy failed to mitigate its damages; and (5) that the Court reconsider its calculations of damages by using actual monthly figures rather than an "annualized" average. The defendants have filed an objection to the Motion for Clarification and Reconsideration on the basis that this Court's decision was abundantly clear and unambiguous.
 "WILLFUL AND MALICIOUS CONDUCT"
The plaintiffs contend that the Court's decision addressed only the issue of punitive damages and made no finding as to whether the defendants' conduct was "willful and malicious" within the meaning of § 6-41-3 (c). Plaintiffs contend that the "willful and malicious" standard under the Trade Secrets Act is distinct from, and far less onerous than, that of punitive damages. The plaintiffs contend that cases construing identical language under the Bankruptcy Code nondisehargeability provision defining "willful and malicious" are instructive. "Willful and malicious" means headstrong and knowing (willful) and targeted at the creditor (malicious) in the sense that the conduct is certain or almost certain to cause financial harm." See Barclay'sAmerican Business Credit, Inc. v. Long, 774 F.2d 875 (8th Cir. 1985). "[W]illful" is deliberate conduct which necessarily leads to injury, while "malicious" is conduct in conscious disregard of one's duties or without just cause or excuse, but does not require ill-will or specific intent to do harm. See In reKassoff, 146 B.R. 194 (Bankr. N.D. Ohio 1992).
The plaintiffs maintain that the record evidences that the conduct of the defendants was willful and malicious within the meaning of the Trade Secrets Act. As such, they request that the Court so find and award multiple damages pursuant to § 6-41-3
(c).
In their objection, the defendants argue that the Court found that the defendants' behavior merited the imposition of compensatory damages but not exemplary damages. The defendants contend that the plaintiffs' argument that the standard for willful and malicious conduct is lessened by the nature of the Trade Secrets Act must be denied in light of the clear and unequivocal mandate regarding exemplary damages set forth by our Supreme Court in Palmisano v. Toth, 624 A.2d 314 (R.I. 1993). In order for an award of punitive damages to be justified, the behavior must rise to the level of near criminality. Id.
The defendants contend that the Legislature's failure to define "willful and malicious" is a clear indication that it intended the common law standard for exemplary damages to apply. The defendants note that the Legislature took ample time and care to assist the Court where it deemed it appropriate and necessary to clarify any confusion or ambiguity which may arise concerning their intent. The Legislature defined "improper means," "misappropriation," "person," and "trade secrets," yet no definition of "willful and malicious" was stated. Therefore, the defendants contend that the Court correctly applied the common law standard set forth in Palmisano. Additionally, the defendants note that analogous to the common law standard, the Legislature made the language of § 6-41-3 (c) discretionary with the Court. As such, the Court properly exercised its discretion in finding that exemplary damages were not warranted and that the award of compensatory damages and injunctive relief properly responded to the merits of the case.
Rhode Island General Law 1956 § 6-41-3, entitled "Damages," governs the award of damages in cases involving violations of the Trade Secrets Act. Section 6-41-3 provides that
 "(a) Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.
 (b) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice an award made under subsection (a)."
"The standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages."Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993). "An award of punitive damages is considered an extraordinary sanction and is disfavored in the law, but it will be permitted if awarded with great caution and within narrow limits." Id. The plaintiff must produce evidence "that the defendant acted so willfully, maliciously, or recklessly as to amount to conduct bordering on criminality" in order to proceed on a punitive damages claim. Id. at 320. Yet, "[a]warding exemplary damages, in cases wherein they are allowable, is discretionary . . . and the withholding of punitive damages is one of those determinations that is entirely discretionary with the trier of fact, whether it be judge or jury." Dias v. Vieira, 572 A.2d 877, 879 (R.I. 1990) (citingKenyon v. Cameron, 17 R.I. 122, 125, 20 A. 233, 234 (1890)). If the trial justice determines that adequate facts exist to support such an award, it is in the discretion of the trier of fact to decide whether to make such an award and in what amount. SeePalmisano, 624 A.2d at 318 (quoting Sherman v. McDermott,114 R.I. 107, 109, 329 A.2d 195, 196 (1974)).
Although the plaintiffs direct this Court's attention to bankruptcy cases which express a standard for "willful and malicious" which appears to be less stringent then the standard associated with punitive damages, the cases are not applicable to the instant matter. Furthermore, our Supreme Court has even used the phrase "willful and malicious" in referring to conduct which warranted punitive damages. "[D]espite occasional criticism and denunciation of the doctrine of punitive damages, allowance of exemplary damages upon proof of willful, wanton, or malicious conduct has continued to be the rule in most jurisdictions in this country, " including Rhode Island. See Greater ProvidenceDeposit Corporation v. Jenison, 485 A.2d 1242, 1244 (R.I. 1984);see also Izen v. Winoker, 589 A.2d 824, 829 (R.I. 1991) ("[t]he trial justice, in analyzing the evidence, concluded that although the failure to repair the system within a reasonable time could well constitute negligence, it did not amount to the necessary willfulness, malice, or criminality required by the punitive- damages standard.").
As such, it would appear that the common law standard for punitive damages would apply to the award of exemplary damages under § 6-41-3. Therefore, the motion should be denied on the issue of whether the defendants' conduct met the standard for "willful and malicious."
As evidenced by the language of § 6-41-3 (b), the Court's decision to award exemplary damages is discretionary. The statute provides that if a willful and malicious appropriation exists, the court may award exemplary damages. (emphasis added). In its decision, this Court stated that although the defendants' conduct was reprehensible, it did not rise to the egregious level for an award of punitive damages and that the award of compensatory damages is sufficient as punishment for the defendants' behavior. Decision at 21. Therefore, even if standard for "willful and malicious" appropriation was less onerous than the standard associated with punitive damages, this Court's decision, concerning the request for exemplary damages, was proper since the Court possessed the discretion to deny the award under §6-41-3.
Accordingly, the plaintiffs' Motion for Reconsideration and Clarification of the issue of whether a "willful and malicious" appropriation occurred is denied.
 BRIER COMPANY'S LIABILITY UNDER THE TRADE SECRETS ACT
The plaintiffs contend that the Court failed to address the grounds upon which Brier Company could be held directly liable for use of the trade secret information imparted to it as Read 
Lundy's accountants in the preparation of CSI's business plan and loan application. The plaintiffs ask this Court to find liability by reason of the accounting relationship Brier Company had with the plaintiffs. According to the plaintiffs, the information obtained by Brier and Company in the course of their accounting work for Read Lundy was later used to obtain financing for CSI. As such, "the conduct of Brier Company falls within the scope of the Trade Secrets Act as it was information Brier Company `acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.'" G.L. 1956 § 6-41-1
(B)(2)(b)(ii).
The defendants contend that the record is devoid of any evidence that Brier Company misappropriated trade secrets or disclosed any confidential information to CSI. According to the defendants, there has not been any evidence presented that Michael Brier, while preparing and/or discussing the potential financial projections of CSI with First Bank and Trust, was acting as employee/accountant of Brier Company Inc., on behalf of its client, CSI. Furthermore, there is no evidence that CSI at any time paid Brier Company compensation for services rendered as the corporate accounting firm or that Brier Company gained any benefit or advantage by the conduct of the defendants.
Rhode Island General Laws § 6-41-3 (a) states that" . . . [d]amages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Misappropriation is defined in G.L. 1956 §6-41-1 (B). Section 6-41-1 (B) provides that:
 (B) "Misappropriation" means:
 (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
 (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
 (a) Used improper means to acquire knowledge of the trade secret; or
 (b) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
 (i) Derived from or through a person who had utilized improper means to acquire it;
 (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
 (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. . . .
The Court has held that there was no evidence that Brier 
Company disclosed any confidential information to CSI.
Plaintiffs' Motion for Reconsideration and Clarification of the issue of Brier Company's direct liability is denied.
 MITIGATION OF DAMAGES
The plaintiffs initially allege that while this Court recognized that the burden is placed upon the defendants to prove that the plaintiffs failed to mitigate, the defendants offered no evidence on the issue and, as such, the Court's decision shifted the burden to the plaintiffs. The plaintiffs also contend that "no one testified that Read Lundy could raise its prices once [they] obtained a preliminary injunction." Only Mr. McFarland testified about the possibility of raising prices once they had been lowered in response to CSI's bid and he stated that it could not be done without risking the complete loss of those major customers solicited by CSI. The plaintiffs allege that "Read and Lundy took the proper and most important step to mitigate its damages when it lowered prices in the fall of 1995 in order to keep its major customers." It was the plaintiffs' belief that there was a substantial risk that to raise prices back to their previous level in reliance on a preliminary injunction wouldcompound damages rather than further reducing damages. The plaintiffs contend that Rhode Island law does not require the plaintiffs to take that kind of risk and that BibbyRefrigeration, Heating, and Air Conditioning, Inc. v. Salisbury,603 A.2d 726 (R.I. 1992) establishes the opposite proposition. The plaintiffs state that Bibby stands for the proposition that "[a] defendant whose wrongful conduct caused the harm in the first place ought not to be permitted to require a plaintiff to risk additional harm in order to reduce the defendants' ultimate liability."
The plaintiffs further allege that in order to conclude that they had a duty to mitigate, the Court would have to find that there was no risk of losing customers to third parties, other than CSI, in the event that prices were raised back to their previous levels. The plaintiffs contend that it would have been the defendants burden, under Bibby to prove that the customers had nowhere else to go. Yet, the plaintiffs allege that the defendants "made no effort to prove that the customers in question were Read Lundy's economic captives . . .
The defendants contend that the Court's finding that the plaintiffs failed to mitigate was well-founded on the facts and evidence produced at trial. While the defendants admit that they did not present affirmative evidence of the plaintiffs' failure to mitigate, they assert that evidence of the failure to mitigate was established through the cross examination of Mr. McFarland. According to the defendants, Mr. McFarland testified that price increases were regularly passed onto customers when they were received from the vendors. The defendants argue that in no instance did Mr. McFarland indicate that a client defected or chose to go elsewhere because of the price increase. The defendants assert that the plaintiffs, therefore, were not at risk, as they maintained the same client base as the result of the injunctive relief ordered. As such, during the period of injunctive relief, "Read and Lundy had the ability to mitigate damages by increasing prices to the 35 percent level which was originally anticipated." Therefore, the defendants contend that sufficient evidence exists to justify the Court's decision that the plaintiffs failed to properly mitigate their damages and, as such, the request for reconsideration on the issue of mitigation of damages should be denied.
Generally, an injured party has the duty to mitigate his or her damages. Although the aggrieved party has the duty to mitigate, he or she does not incur liability for failing to do so. 22 Am.Jur.2d Damages § 501 (1988). The aggrieved party is simply prohibited from recovering damages that he or she could reasonably have avoided. However, the defendant has the burden of proving that the plaintiff failed to adequately mitigate his or her damages. See Bibby's Refrigeration, Heating AirConditioning v. Salisbury, 603 A.2d 726, 729 (R.I. 1992) (citingNorm Co. v. Cumberland Coal Co., 53 R.I. 228, 229, 165 A. 592, 593 (1933). The defendant must prove an affirmative fact and ". . . show that the injured party failed to take reasonable action to lessen the damages; that the damages were in fact enhanced by the failure; and that the damages which could have been avoided can be measured with reasonable certainty." Prestonv. Keith, 584 A.2d 439, 444 (Conn. 1991) (citing 2 M. Minzer,Damages in Tort Actions § 16.11. P. 16-18 (1989)).
In its decision, this Court found that the plaintiffs failed to mitigate their damages since they could have and should have increased their profit margin to 35 percent during the period that CSI was enjoined from competing with them. The defendants met their burden in demonstrating a lack of mitigation and the plaintiffs' Motion for Reconsideration and Clarification on this issue is therefore denied.
 CALCULATION OF DAMAGES
The plaintiffs challenge the computation of the damage award on the basis that the Court used annualized figures rather than the actual monthly sales figures. According to the plaintiffs, the annualized figures used by the Court fail to account for the fact that monthly sales during the pre-injunction period were generally higher after May of 1996. Using the actual monthly figures, the actual figure for damages from price reductions would be $55,838 rather than $41,722 and the total damages once PY Small Boats and Globe Belts are added in would be $82,052 rather than $67,936.
The defendants challenge the use of monthly figures on the basis that Ms. Parente failed to include the commission structure in her calculations for Alden Yachts, Black Watch, and TIP, and therefore, the pre-injunctive period (10/95-2/96) is not properly calculated. Furthermore, defendants maintain that since injunctive relief was entered on March 8, 1996, the damages should not include the alleged losses for the period of April 1996 and May 1996 since the plaintiffs failed to mitigate its damages. Therefore, the total sales for the period was $571,098 not $726,106 and the lost profit would be $43,917.
Since the damages are not necessarily calculated based upon mathematical precision but to a reasonable certainty, the adjusted damage calculation, once April and May are eliminated, is nearly the same number rendered by this Court in its decision. As such, the Court will not disturb said damage calculations.
Damage issues are usually fact specific. DiPardo Sons, Inc.v. Lauzon, 708 A.2d 165, 175 (R.I. 1998). The basic precondition for the recovery of lost profits is that such a loss be established with reasonable certainty. Long v. Atlantic PBS,Inc., 681 A.2d 249, 253 (R.I. 1996). Although mathematical precision is not required, the [finder of fact] should be provided with some rational model of how the lost profits occurred and on what basis they have been computed. Id. The measure of damages is the loss to the plaintiff. Id. Actual damages include both lost sales and price erosion. Roton Barrier,Inc., v. Stanley Works, 79 F.3d 1112, 1120 (Fed.Cir. 1996). However, an aggrieved party is prohibited from recovering damages that he or she could have reasonably avoided. Bibby, 603 A.2d at 729.
In its decision, this Court found that Brier and CSI were jointly and severally liable to the plaintiffs for $67,936. This figure included $41,722 in lost profits and $26,214 for the actual lost profits associated with Globe Manufacturing and PY Small Boats. If this Court were to accept the plaintiffs' monthly figures, minus the figures for the injunction period during which they failed to mitigate, the lost profits would be $43,917.43. When the $26,214 of actual lost profits for PY Small Boats and Globe Belts are added to the above figure, the defendants would be jointly and severally liable to the plaintiffs for $70,131. The difference between the Court's award using annualized figures and the plaintiffs monthly figures would then be approximately $2,195.
This Court has reviewed the award of damages and finds same to be reasonable. Accordingly, the plaintiffs' request for a recalculation of the damage award is denied.
For the reasons set forth above, the plaintiffs' Motion for Reconsideration is denied and the Court's decision of May 13, 1998 will stand. Counsel shall prepare an appropriate final judgment reflecting the Court's original rulings.